[No. B017000. Second Dist., Div. Seven. Dec. 18, 1986.]

OLIVER MACHINERY COMPANY,
Cross-complainant and Appellant, v.
UNITED STATES FIDELITY AND GUARANTY COMPANY,
Cross-defendant and Respondent.

1512

COUNSEL

Kilpatrick, Clayton, Meyer & Madden, Donald W. Meyer and Scott M. Koppel for Cross-complainant and Appellant.

Norby & Brodeur and Paul D. Loreto for Cross-defendant and Respondent.

## OPINION

JOHNSON, J.—On cross-motions for summary judgment or adjudication of issues, the trial court determined as a matter of law United States Fidelity and Guaranty Company (USF&G) has no duty to defend or indemnify Oliver Machinery Company (Oliver) in the underlying action under a vendor's broad form endorsement contained in a policy issued to Pal Industries, Inc. (Pal).

There are two issues on appeal. First, does an exclusionary clause for relabeled products release the insurer from providing coverage and the duty to defend the additional insured. Second, is a product manufactured by a predecessor corporation a "named insured's product" under an insurance policy carried by a successor corporation so as to obligate the insurer to provide coverage and defend the additional insured on that policy. We conclude this exclusionary clause does not release the insurer from its obligation to cover and defend Oliver. Nonetheless we hold USF&G is not required to provide coverage or defend Oliver in this case because the product allegedly causing the injury was not a "named insured's product" under the terms of this policy. Accordingly, we affirm the summary judgment in favor of USF&G.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

The parties agreed to a stipulated statement of facts for the purposes of the summary judgment. On March 30, 1979, Pal agreed to purchase Rankin Brothers Manufacturing Company, Inc. (Rankin). Rankin was legally dissolved as a corporation on March 17, 1980, after the sale of its assets. Pal Rankin Division continued to manufacture the same line of machines under the Davis & Wells trade name. On May 12, 1980, USF&G issued a special multiperil policy with a comprehensive general liability coverage part to Pal for the period June 4, 1980, to June 4, 1981. Pal was designated as the "named insured." Oliver was named as an "additional insured" on a vendor's broad form endorsement to the policy. On May 16, 1980, Pal requested $651 from Oliver to cover the cost of the vendor's coverage for Oliver based on an estimated $100,000 of purchases of Davis & Wells woodworking equipment. Oliver complied.

Plaintiff Miguel Aguirrez was allegedly injured on March 31, 1981, by a Davis & Wells woodworking machine manufactured and sold by Rankin to Oliver in 1971 which distributed it after 1971 and prior to 1980. USF&G assumed the defense of named insured Pal in the underlying action, but

refused to represent Oliver on the basis of an exclusion applying to relabeled products.

Oliver and USF&G brought cross-motions for summary judgment seeking declaration of USF&G's duty to defend and indemnify Oliver in the underlying action. The trial court ruled in favor of USF&G. It determined as a matter of law USF&G has no duty to defend or indemnify Oliver under the vendor's broad form endorsement for injuries caused by products manufactured and sold by a predecessor corporation to the named insured. Oliver appealed.

I. PROVISION 1(B)(IV) OF THE VENDOR'S BROAD FORM ENDORSEMENT PROVIDES ILLUSORY COVERAGE FOR OLIVER

 USF&G contends provision 1(B)(IV) relieves it from providing coverage and defense of Oliver in the underlying action because the product was relabeled after the contract of sale was negotiated. The provision at issue in the vendor's broad form endorsement states as follows: "THE INSURANCE WITH RESPECT TO THE VENDOR DOES NOT APPLY TO . . . (B) BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF . . . (IV) PRODUCTS WHICH AFTER DISTRIBUTION OR SALE BY THE NAMED INSURED HAVE [sic] LABELED OR RELABELED OR USED AS A CONTAINER, PART OR INGREDIENT OF ANY OTHER THING OR SUBSTANCE BY OR FOR THE VENDOR." We think proper construction of this exclusionary clause does not support USF&G's argument.

 An exclusionary clause "must be 'conspicuous, plain and clear.'" (*Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168].) It must also be subjected to the closest possible scrutiny. (*Ponder* v. *Blue Cross of Southern California* (1983) 145 Cal.App.3d 709, 718 [193 Cal.Rptr. 632].) We note, moreover, "[e]xclusionary clauses or exceptions are to be interpreted by their plain meaning and will not be stretched to cover areas not intended by the clause. [Citation omitted.]" (*Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 751 [161 Cal.Rptr. 322].)

 Based on the meager facts at our disposal,[1] it appears all the Davis & Wells machines distributed by Oliver are relabeled by Pal with an Oliver Machinery Company nameplate by the terms of their purchase agreement.

---

[1]Stipulation number 8 states: "The Davis & Wells machines distributed by Oliver have all been relabeled at the manufacturing plant with an Oliver Machinery Company nameplate, pursuant to the terms of their purchase agreement."

Thus, to interpret this clause as USF&G argues would render the endorsement covering additional insured Oliver a nullity. (*Sears, Roebuck and Co.* v. *Reliance Ins. Co.* (7th Cir. 1981) 654 F.2d 494, 495, 499, 501.) Oliver would not be covered under any circumstances by this policy even for products *manufactured* by Pal itself because under the terms of the purchase agreement between Oliver and Pal the products are always relabeled. Moreover, to interpret an insurance contract to provide *no* coverage for the insured would disappoint its reasonable expectations. (See *Gray* v. *Zurich Ins. Co.*, *supra*, 65 Cal.2d 263, 274.)

We find persuasive the construction of a virtually identical exclusionary clause by the Seventh Circuit in *Sears, Roebuck and Co.* v. *Reliance Ins. Co.*, *supra*, 654 F.2d 494, 496. Sears sought legal representation and indemnification from two insurance companies in an underlying products liability suit following a child's death from injuries sustained when her slacks purchased from Sears caught fire. (*Id.*, at p. 495.) Sears was named an insured in the vendor's endorsement of both manufacturers' insurance policies. (*Ibid.*) The court construed a provision identical to the one in the instant case and concluded the relabeling exclusion is only effective when the injury itself is somehow caused by "the relabeling or use as 'part' of another product." (*Id.*, at pp. 496, 499.) It rejected the insurer's argument coverage of Sears was excluded because the fabric had been made into slacks and labeled by another company. (*Id.*, at p. 496.) The court correctly noted "Riegel sold the fabric to Sears to become slacks with the Sears' label." (*Id.*, at p. 498.) The *Sears* court reasoned the insurer's construction of the provision was unreasonable because it "would nullify the very purpose of the vendor's endorsement, causing a forfeiture where the parties intended coverage." (*Id.*, at pp. 498-499.) Similarly, it is patently clear if we accepted the USF&G's construction of the provision "the vendor's insurance covering . . . [Oliver would] not [be] worth the piece of paper on which it was printed." (*Id.*, at p. 498.)

## II. A Product Manufactured by Predecessor Corporation Rankin and Distributed by Oliver Is Not a "Named Insured's Product" Under Insurance Policy Carried by Successor Corporation Pal Industries

The parties stipulated to the policy provisions in dispute. The vendor's broad form endorsement for the additional insured, that is, Oliver states in pertinent part:

"This Endorsement Modifies Such Insurance as Is Afforded by the Provisions of the Policy Relating to Comprehensive General

LIABILITY INSURANCE COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE

"· · · · · · · · · · · · · ·

"IT IS AGREED THAT THE 'PERSONS INSURED' PROVISION IS AMENDED TO INCLUDE ANY PERSON OR ORGANIZATION (DESIGNATED BELOW [OLIVER MACHINERY COMPANY]) 1. (HEREIN REFERRED TO AS 'VENDOR') AS AN INSURED, BUT ONLY WITH RESPECT TO THE DISTRIBUTION OR SALE IN THE REGULAR COURSE OF THE VENDOR'S BUSINESS OF THE NAMED INSURED'S PRODUCTS (DESIGNATED BELOW [PAL INDUSTRIES]) 2, SUBJECT TO THE FOLLOWING ADDITIONAL PROVISIONS: . . . ." (Emphasis added.)

The policy defined "Named Insured's products" as "goods or products manufactured, sold, handled or distributed by the Named Insured [boldface] or by others trading under his name, including any container thereof (other than a vehicle), . . ."

██ We must make our own independent review of the contract before us since this case was submitted pursuant to a written "stipulation of facts" and the insurance policy was received without any evidence to aid in its construction. (*Paul Masson Co.* v. *Colonial Ins. Co.* (1971) 14 Cal.App.3d 265, 268 [92 Cal.Rptr. 463].) ██ Because the contract was prepared by the insurer, we must construe it against USF&G. (*Ponder* v. *Blue Cross of Southern California, supra,* 145 Cal.App.3d 709, 718 [citation omitted].) Moreover, because it is an insurance contract, we are under an even more stringent duty to interpret it in favor of the insured. (*Ibid.*)

██ Oliver contends machines manufactured by Rankin constitute "named insured's products" under the policy definition because Rankin's products are being *traded under* the named insured's name, Pal. We agree with the trial court's conclusion "[i]t strains logic and the ordinary meaning of language to conclude, as Oliver argues, that the product was sold by Rankin Brothers Manufacturing Inc. while trading under the name of Pal, Rankin Division. The product was in fact sold to Oliver years before Pal acquired Rankin."

██ "[W]ords in an insurance policy are to be read in their plain and ordinary sense" unless there is a clear indication to the contrary. (Citation omitted.) (*Nichols* v. *Great American Ins. Companies* (1985) 169 Cal.App.3d 766, 775 [215 Cal.Rptr. 416].) ██ Giving the plain meaning to the term "named insured's products" as defined in this policy, we conclude it refers to goods or products manufactured by Pal and not by its predecessor

Rankin. We also note Pal and Rankin stated in their purchase agreement ". . . [b]uyer shall have no liability to Rankin customers with regard to any product sold prior to the Closing. . . ." Moreover, Oliver's distribution of the machine did not occur during the coverage period.

Oliver maintains the term "named insured's products" *should* be interpreted to include products manufactured by a predecessor corporation. It relies on *Ray* v. *Alad Corporation* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3] to support its position. In *Alad* the Supreme Court held under certain circumstances the liabilities of a predecessor corporation may be imposed upon its successor corporation. (*Id.*, at pp. 25, 34.) Plaintiff in that case asserted strict tort liability against Alad Corporation which had not manufactured or sold the ladder causing his injury, but had only succeeded to the business of the ladder's manufacturer prior to the injury. (*Id.*, at p. 24.) The court took into account the successor corporation acquired the plant, equipment, inventory, trade name, and good will and "continued to manufacture the same line of ladders under the 'Alad' name, using the same equipment, designs, and personnel, and soliciting Alad I's customers through the same sales representatives with no outward indication of any change in the ownership of the business." (*Id.*, at p. 25.)

The *Alad* court looked to the social policies underlying strict tort liability for defective products to determine if there should be another exception to the general rule of successor liability which holds a purchaser does not assume the seller's liabilities. (*Id.*, at pp. 28, 30.) Finding the purpose of the rule of strict tort liability is to insure the manufacturer bears the cost of injury from defective products, it considered three factors which justify the imposition of successor liability: (1) plaintiff's lack of remedies against the original manufacturer; "(2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." (*Id.*, at pp. 30-31.)

We decline to extend this narrow exception for successor liability to insurance coverage for sellers of products which were manufactured by a predecessor company. Coverage is a question of contract interpretation and the duty to defend is based on the subject insurance contact. (7C Appleman, Insurance Law and Practice (Berdal ed. 1979) § 4682, pp. 22, 27.) In successor liability cases, such as *Alad,* the person injured is not in a contractual relationship with the manufacturer and generally cannot protect himself or herself from the eventuality of injury from a product manufactured

by a predecessor company. Here the distributor Oliver was a party to the insurance contract and could have purchased independent insurance for its liability for products it sold which were manufactured by the predecessor company or could have amended the policy in question to cover liability for these products.[2]

Thus, we turn again to the provisions at issue. ■ "The express provisions of the insurance contract must be considered in light of the insured's normal expectations of the extent of the coverage of the policy, . . . [Citations omitted.]" (*Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 220 [110 Cal.Rptr. 139, 514 P.2d 1219].) A party's reasonable expectation of coverage is a question of law not a question of fact. (*Wolf Machinery Co.* v. *Insurance Co. of North America* (1982) 133 Cal.App.3d 324, 329 [183 Cal.Rptr. 695].) ■ The parties stipulated to the fact Oliver paid $651 to Pal for the cost of the vendor's coverage based on an estimated $100,000 worth of purchases of Davis & Wells woodworking equipment. The trial court concluded the insurer contemplated coverage in the policy of only those risks arising from the sales made by Pal to Oliver during the coverage period. Oliver contends this was an impermissible inference by the trial court. We disagree.[3] We think this is an inference reasonably deducible from the stipulation which is not contradicted by other inferences or evidence. (See *Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 184-185 [163 Cal.Rptr. 912].)

The vendor's broad form endorsement clearly states it applies "only with respect to the distribution or sale in the regular course of the vendor's business of the named insured's products." To include products manufactured by Rankin, the predecessor company, perhaps years earlier is an irrational construction of both the insured's and insurer's reasonable expectations for coverage. (See *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841] [reasonable expectations

---

[2]Oliver also contends it expected continuous coverage from USF&G for "*all* claims arising during the policy period" because prior to Pal's purchase of Rankin it had been an additional insured on Rankin's insurance policy on a claims basis. (Italics in original.) Thus Oliver argues it would be unreasonable for it to have concluded it must purchase additional coverage for claims arising from products it distributed for Rankin while it is an additional insured on Pal's policy. We do not find this a persuasive argument. We also note there is no evidence of the prior policy in the record since this point was not included in the stipulation of facts.

[3]Appellant cites *Sears, Roebuck & Co.* v. *Employers Ins. of Wausau* (N.D.Ill. 1983) 585 F.Supp. 739, 745 in support. In that case the court concluded the fact an insurer charged only a "'minimum premium'" for the vendor's endorsement did not limit its coverage. It reasoned the true cost for liability protection was reflected in the initial premium paid by the principal insured and the insurer bears the risk of setting a "'low' premium." In the instant case, however, the evidence supports the inference the premium was based on estimated sales, not a minimum premium.

of the insurer manifested in part by type of information sought upon application and amount of premium].)

## III. USF&G Has no Duty to Defend or Indemnify Oliver Because There Is No Potential Coverage Under the Terms of This Policy

Oliver claims any ambiguities in the policy should be construed in favor of providing it a defense in the underlying action. It also argues no distinction can be made between USF&G's providing a defense for Pal and not for Oliver. We disagree. USF&G asserts it assumed Pal's defense in the underlying action because allegations against Pal bear the potential of successor liability. We do not, and need not, reach the question whether USF&G has a duty to defend and indemnify Pal for injuries caused by products manufactured by Rankin.[4]

An insurer has a duty to defend the insured "whenever the insurer ascertains facts which give rise to the possibility or potential of liability to indemnify. [Citation omitted.]" (*Nichols* v. *Great American Ins. Companies, supra,* 169 Cal.App.3d 766, 772; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 276-277.) This "duty to defend is broader than the duty to indemnify." (*Nichols* v. *Great American Ins. Companies, supra,* 169 Cal.App.3d 766, 772.) Since we have determined the product which allegedly injured plaintiff in the underlying action was not a named insured's product, the policy does not provide Oliver with coverage for potential liability. The law is clear. There is no duty to defend when there is no potential coverage in the policy. (*Hartford Fire Ins. Co.* v. *Superior Court* (1983) 142 Cal.App.3d 406, 413 [191 Cal.Rptr. 37, 39 A.L.R.4th 189]; *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 274-275.)

### Disposition

Although the "relabeled product exclusion" does not relieve respondent USF&G from its duty to defend and indemnify appellant Oliver Machinery, a product manufactured by a predecessor corporation is not a "named insured's product" and thus is not within the coverage of this insurance

---

[4]In fact, we cannot determine the full extent of USF&G's obligation to defend and indemnify the named insured because of the very poor reproduction and compilation of the policy in the record.

contract. Accordingly, the judgment is affirmed. Respondent to receive its costs on appeal.

Lillie, P. J., and Thompson, J., concurred.