INAMED CORPORATION,
et al., Plaintiffs,

v.

MEDMARC CASUALTY INSURANCE
COMPANY, et al., Defendants.

No. 00–11325 ABC(MANx).

United States District Court,
C.D. California,
Western Division.

Nov. 4, 2002.

Jeffrey S Raskin, Michael Y Horton, Zevnik Horton & Palmer, Los Angeles, CA, for Inamed Corporation, a Delaware corporation, Collagen Aesthetics Inc, a Delaware corporation, Aei Inc, a Delaware corporation fka Collagen Aesthetics Inc, plaintiffs.

Otis D Wright, II, Wilson Elser Moskowitz Edelman & Dicker, Los Angeles, CA, Thomas J Skane, Murtaugh Miller Meyer & Nelson, Irvine, CA, Donald Craig Erickson, Donald C Erickson Law Offices, Irvine, CA, for Medmarc Cas. Ins. Co., defendant.

R Jeff Carlisle, Randall J Peters, Lynberg & Watkins, Los Angeles, CA, for American Specialty Lines Insurance Company, an Alaska corporation, DOES, 1 through 30a, defendant.

Jeffrey S. Raskin, Zevnik Horton & Palmer, Los Angeles, CA, for Michigan Medical Corp., Sierra Medical Technologies.

Charles S. Treat, Latham & Watkins, San Francisco, CA, for Cohesion Technologies, Inc.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COLLINS, District Judge.

Defendant Medmarc Casualty Insurance Company ("Defendant" or "Medmarc") filed the above-referenced motion for summary judgment on September 23, 2002. The motion came on for hearing before this Court on November 4, 2002. After considering the materials submitted by the parties, argument of counsel and the case file, the Court hereby DENIES Defendant's Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

The instant suit arises out of a number of bodily injury claims filed against Plaintiffs Inamed Corporation ("Inamed"), Collagen Aesthetics, Inc. ("Collagen"), AEI, Inc. ("AEI"), McGhan Medical Corp. ("McGhan") and Sierra Medical Technologies, Inc. ("Sierra," and together with Inamed, Collagen, AEI and McGhan, "Plaintiffs") by recipients of Trilucent breast implants. (First Amended Complaint ("FAC") ¶¶ 1–13.) Trilucent breast implants, which are filled with soybean oil, are transparent during mammography, unlike silicone and saline implants, thus increasing a doctor's ability to detect breast tumors. (FAC ¶ 2.) The Trilucent product was manufactured by Lipomatrix, Inc. ("Lipomatrix"), a company acquired by Collagen on or around January of 1996. (Defendant's Statement of Uncontroverted Facts ¶¶ 2, 4.) In November of 1998, Lipomatrix and the Trilucent product were sold to Sierra. (Ex. L to the Declaration of Namvar A. Mokri ("Mokri Decl."), Stock Purchase Agreement between Collagen and Sierra, dated November 6, 1998.)

Between 1996 and 1999, more than 10,000 women were fitted with Trilucent breast implants. (FAC ¶ 2.) As part of its regulatory function, the United Kingdom's Medical Device Agency (the "MDA") performed periodic reviews of the clinical data associated with the Trilucent implants. (FAC ¶ 3.) In March of 1999, the MDA

expressed concerns about the Trilucent product, resulting in the voluntary withdrawal of the product from the market. (FAC ¶ 4; Ex. K to Mokri Decl., MDA Advisory Report of March 8, 1999.) The MDA continued to monitor the product until June 6, 2000, at which time it issued a Hazard Notice recommending that all women with Trilucent breast implants be explanted. (FAC ¶ 6; Ex. B to Mokri Decl.)

## A. The Cohesion Policies

Cohesion Technologies, Inc. ("Cohesion") was a wholly-owned subsidiary of Collagen until it was spun off in August of 1998. (Defendant's Statement of Uncontroverted Facts ¶ 10.) At no time was Cohesion involved in the manufacture or sale of the Trilucent product. (Defendant's Statement of Uncontroverted Facts ¶ 9.) After the spinoff Collagen supplied bovine collagen to Cohesion, which was used in the development and sale of Cohesion's products. (Defendant's Statement of Uncontroverted Facts ¶ 11.)

At the time the policies at issue were issued, Joan Trampeneau was Cohesion's Manager of Administrative Services and Michael Mirsky of Saylor & Hill was Cohesion's insurance broker. (Plaintiffs' Statement of Genuine Issues ¶¶ 12, 14.) The following policies issued by Defendant to Cohesion are at issue in this case: Policy Number 99CA380065 (for the period beginning July 1, 1999 and ending July 1, 2000) and Policy Number 00CA380094 (for the period beginning July 1, 2000 and ending July 1, 2001). (Defendant's Statement of Uncontroverted Facts ¶ 15.) Collagen's products and gross sales figures were not described in Cohesion's renewal policy applications. (Plaintiffs' Statement of Genuine Issues ¶ 19; Exs. F and G to Mokri Decl., Policy No. 99CA380065 and Policy No. 00CA380094 (the "Cohesion Policies."))

On or around January 2001, Plaintiffs, Defendant and American International Speciality Lines Insurance Company ("AISLIC") entered into the Trilucent Claims Settlement Protocol Interim Funding Non–Waiver Agreement (the "Interim Funding Agreement"). (Defendant's Statement of Uncontroverted Facts ¶ 22.) Under the terms of the Interim Funding Agreement, each party reserved the right to seek reimbursement of any and all funds that might be paid pursuant to the agreement. (Defendant's Statement of Uncontroverted Facts ¶ 23; Ex. O to Okri Decl., Interim Funding Agreement.) The Interim Funding Agreement also provided for two contributions of $5 million each from Defendant. (Plaintiffs' Statement of Genuine Issues ¶ 24; Ex. O to Okri Decl., Interim Funding Agreement.) Defendant allocated the first $5 million to Collagen's 1997–98 policy and the second $5 million entirely to the Cohesion 1999–2000 policy. (Defendant's Statement of Uncontroverted Facts ¶¶ 25, 27.) Plaintiffs permitted such allocations as an accommodation to Defendant, subject to reallocation. (Plaintiffs' Statement of Genuine Issues ¶¶ 25, 26.)

## B. The Inamed Policy

Of the policies Defendant issued to Inamed, only Policy Number 00CA380030 (for the period beginning March 1, 2000 and ending March 1, 2001) (the "Inamed Policy") is at issue. (FAC ¶ 26.) Inamed claims that it is entitled to coverage for claims made by Trilucent recipients under its Medmarc policy. (FAC ¶ 34.) Collagen is not identified as an insured under any provision of Inamed's policy with Medmarc. (Defendant's Statement of Uncontroverted Facts ¶ 35; Ex. F to Okri Decl., Inamed Policy.)

The instant lawsuit commenced on July 25, 2000, when Plaintiffs Inamed, Collagen and AEI filed the original complaint in Los

**1120**

Angeles County Superior Court. The complaint was removed to this Court on October 25, 2000. On May 10, 2001, the First Amended Complaint was filed, adding McGhan[1] and Sierra as plaintiffs. The First Amended Complaint contained claims for declaratory relief and breach of contract against Defendant.[2] On June 8, 2001, Defendant filed its counterclaim against Collagen, AEI and Cohesion, for reformation and declaratory relief.

On September 23, 2002, Defendant filed the instant motion for summary judgment. On October 21, 2002, Plaintiffs filed their opposition. Defendant filed its reply on October 28, 2002. The motion came on for hearing on November 4, 2002.

## II. STANDARD ON A MOTION FOR SUMMARY JUDGMENT

The party moving for summary judgment has the initial burden of establishing that there is "no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978); *Fremont Indemnity Co. v. California Nat'l Physician's Insurance Co.*, 954 F.Supp. 1399, 1402 (C.D.Cal.1997).

If the moving party has the burden of proof at trial (*e.g.*, a plaintiff on a claim for relief, or a defendant on an affirmative defense or counter-claim), the moving party must make a "showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting from Schwarzer, *Summary Judgment Under the Federal Rules; Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–

88 (1984)). Thus, if the moving party has the burden of proof at trial, that party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis in original); *see Calderone*, 799 F.2d at 259.

Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings ... [T]he adverse party's response ... **must set forth specific facts** showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e) (emphasis added). A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements to that party's case, and on which that party would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in favor of the nonmovant. *Id.* at 248, 106 S.Ct. 2505. However, the Court must view the evidence presented "through the prism of the substantive evidentiary burden." *Id.* at 252, 106 S.Ct. 2505.

## III. DISCUSSION

Defendant moves for summary adjudication in its favor on (1) its counterclaim for

---

1. McGhan is a subsidiary of Inamed that has sold aesthetic medical devices for over twenty years. Plaintiffs' Statement of Genuine Issues ¶ 108; Declaration of David E. Bamberger ("Bamberger Decl.") ¶ 2.

2. Plaintiffs have settled their third claim against Defendant AISLIC, who was dismissed with prejudice from this case on September 20, 2002.

reformation of the Cohesion Policies based on mutual mistake and (2) Plaintiffs' first and second causes of action, for declaratory relief and breach of contract, on the ground that Inamed is not legally obligated under its insurance policy to pay any damages arising out of the Trilucent breast implant claims.

## A. Defendant's Counterclaim for Reformation

 "[A]n insurance policy is a contract and must be construed in the same manner as other contracts." *Garcia v. Trans Pacific Life Insurance Company,* 156 Cal.App.3d 900, 903, 203 Cal.Rptr. 325 (1984). As with other types of contracts, the goal of insurance contract interpretation is "to give effect to the mutual intent of the parties." *Maryland Casualty Co. v. Nationwide Mutual Ins. Co.,* 81 Cal. App.4th 1082, 1089, 97 Cal.Rptr.2d 374 (2000). California Civil Code § 1636 provides that "[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." If a written contract fails to express the real intention of the parties, whether "through fraud, mistake or accident... such intention is to be regarded, and the erroneous parts of the writing disregarded." Cal. Civ.Code § 1640.

### 1. *Plaintiffs Have Raised a Genuine Issue of Fact as to Defendant's Claim of Mutual Mistake*

Defendant contends that the parties to the Cohesion Policies intended that Collagen's coverage under those policies be limited to liability arising from the use of bovine collagen supplied by Collagen in Cohesion's products. Motion at 11:16–21.

According to Defendant, the Designated Person or Organization ("DPO") endorsement for Collagen excluded Collagen's products that were not incorporated into Cohesion's products. Motion at 11:21–23. According to Defendant, the addition of Collagen as a named insured to the Cohesion Policies without a limiting restriction was the result of mutual mistake, and that the coverage provided for all Collagen products under the Cohesion Policies extended the scope of insurance that Cohesion intended to purchase or that Defendant intended to provide. Motion at 11:24–28.

Defendant cites *Hess v. Ford Motor Co.,* 27 Cal.4th 516, 117 Cal.Rptr.2d 220, 41 P.3d 46 (2002) in support of its position that the unrestricted inclusion of Collagen was a mutual mistake. In *Hess,* a plaintiff involved in an automobile accident executed a release absolving all potential tortfeasors of liability, pursuant to the terms of a settlement agreement with the insurer of the other driver. 27 Cal.4th at 520–521, 117 Cal.Rptr.2d 220, 41 P.3d 46. The plaintiff later filed suit against the defendants. *Id.* Upon discovery of the release, the defendants moved for summary judgment on the ground that the release absolved all potential tortfeasors of liability. *Id.* The plaintiff filed a separate action against the other party involved in the automobile accident and his insurer for reformation of the release pursuant to California Civil Code § 3399 on the ground of mutual mistake,[3] seeking to strike the language releasing all other persons from liability. *Id.* In plaintiff's action for reformation, the defendants admitted the mutual mistake and the release was reformed accordingly. *Id.* The plaintiff then sought to raise mutual mistake as a defense to the

---

**3.** Cal. Civ.Code § 3399 provides, in pertinent part, that when, through "mutual mistake of the parties ...", a written contract does not express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention."

defendant's claim of third party beneficiary status under the release. *Id.* at 525, 117 Cal.Rptr.2d 220, 41 P.3d 46. The court in *Hess* allowed the plaintiff to produce uncontroverted evidence of the mutual mistake and subsequent reformation of the release. *Id.* at 527, 117 Cal.Rptr.2d 220, 41 P.3d 46.

Defendant's reliance on *Hess* is entirely misplaced. In *Hess,* the parties to the contract at issue acknowledged the mutual mistake at the time of formation, and the plaintiff sought to use proof of the mutual mistake and subsequent reformation against a third party claiming beneficiary status. In the instant action, the existence of a mutual mistake is at issue. *Hess* indicates that the determination of whether a mutual mistake occurred is a question of law where "the extrinsic evidence is not in conflict." *Id.* at 527, 117 Cal.Rptr.2d 220, 41 P.3d 46, citing *Alderson v. Ins. Co. of North America,* 223 Cal.App.3d 397, 412, 273 Cal.Rptr. 7 (1990) (affirming a finding of mutual mistake on summary judgment where the extrinsic evidence was uncontroverted). *Hess* is plainly distinguishable from the instant case, in which the extrinsic evidence is in conflict and no court has made a determination that the policies at issue were entered into as the result of a mutual mistake.

Plaintiffs allege that Trampeneau, the Manager of Administrative Services for Cohesion, whose testimony Defendant relies on to support its position that Cohesion intended to limit the extent of Collagen's insurance coverage, is not the individual responsible for determining the nature and extent of Cohesion's insurance coverage. Opp'n at 15:9–11. According to Plaintiffs, Frank DeLustro, along with two other Cohesion officers, was responsible for making those decisions. Opp'n at 15:11–12. DeLustro, President and Chief Operating Officer of Cohesion until October of 2001, has testified that Cohesion did not consider limiting Collagen's rights under the Cohesion Policies. Declaration of Frank DeLustro ¶ 6.

Plaintiffs also claim that Cohesion did not object to unrestricted coverage of Collagen, for which they cite the letter dated November 20, 2000 from counsel for Cohesion to counsel for Inamed. Opp'n at 16:11–15; Ex. DD to the Declaration of Jeffrey S. Raskin ("Raskin Decl."). The Court finds that nothing in this letter suggests Cohesion's willingness to extend unlimited coverage to Collagen. In fact, the letter indicates Cohesion's preference for Inamed to use its own and Collagen's policies, although it does not in its letter explicitly refuse to extend coverage to Collagen. Ex. DD to Raskin Decl.

A third issued raised by Plaintiffs is that if there was any mistake on the part of Cohesion, it did not arise at the time of contracting. Opp'n at 16:25–17:4. If a contract reflects one of the parties' intent at the time it is entered into, the resulting contract is the product of unilateral, rather than mutual, mistake. A contract that is entered into as the result of a unilateral mistake will be reformed only if the other party knew of or suspected the mistake at the time of contracting. Cal. Civ.Code § 3399.

Plaintiffs also claim that there was no need to state Collagen's gross sales and products in the Cohesion policy renewal applications, because Collagen had no gross sales or products. Opp'n at 18:3–9. In support of this, Plaintiffs refer to the Declaration of David E. Bamberger, which indicates that Collagen was integrated into McGhan by late 1999 and had no independent product lines after that time. Bamberger Decl. ¶ 2.

Finally, Plaintiffs raise the issue of Defendant's failure to provide evidence of its own intent at the time the policies were

issued, other than the Declaration of Fran Stockwell, whom Plaintiffs contend lacks personal knowledge of the transactions, and therefore has no basis to testify as to Defendant's intent.[4] Opp'n at 18:12–20.

### 2. *Defendant is Not Entitled to Reformation of the Cohesion Policies*

■ Under California law, a written instrument is presumed to express the true intent of the parties. *In the Matter of Beverly Hills Bancorp*, 649 F.2d 1329, 1333 (1981). "Reformation or revision on the ground of mutual mistake... requires clear and convincing evidence of the alleged mistake." *Id.* "Clear and convincing evidence requires a finding of high probability ... requiring that the evidence be so clear as to leave no substantial doubt; sufficiently strong to command an unhesitating assent of every reasonable mind." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App.4th 1269, 1287–1288, 31 Cal.Rptr.2d 433 (1994). Defendant contends that the standard is lower, based on the court's statement in *Hess* that "if there is a mutual mistake of the parties, a written contract may be revised, on the application of an aggrieved party," (27 Cal.4th at 524, 117 Cal.Rptr.2d 220, 41 P.3d 46). As stated above, the *Hess* court discussed the introduction of another court's finding of mutual mistake as a defense in a separate action. In the instant case, Defendant raises mutual mistake as part of its counter-claim, and the extrinsic evidence concerning the alleged mutual mistake is in dispute.

**4.** Plaintiffs also raise the issue of the failure of Stockwell to execute his declaration under penalty of perjury. This defect has been corrected.

**5.** Defendant states that "[n]owhere in the Merger Agreement does it state that Inamed intended to assume the Trilucent liabilities." Motion at 20:26–21:1. Regardless of how

■ The Court finds that Plaintiffs have raised genuine issues of fact as to whether the Cohesion Policies reflect a mutual mistake at the time the parties entered into the policies, based on the above-referenced disputed facts concerning the intent of the parties. The Court therefore DENIES Defendant's Motion for Summary Judgment on its Counter–Claim for Reformation.

### B. Inamed's First Cause of Action for Declaratory Relief

Defendant argues that Inamed's policy does not cover Trilucent breast implant claims because Inamed is not "legally obligated to pay damages" for bodily injury arising out of the manufacture, sale, handling, distribution or disposal of the Trilucent breast implants. Motion at 16:19–21.

### 1. *There is At Least a Genuine Issue as to Whether Inamed Excluded Liability for Trilucent Breast Implants Claims When It Purchased Collagen*

a. The Merger Agreement.

Defendant contends that "Lipomatrix and the Company's Trilucent breast implant business and liability were specifically excluded from Inamed's purchase of Collagen." Motion at 18:8–10. Defendant's interpretation of the Agreement and Plan of Merger, dated as of July 31, 1999, among Inamed, Inamed Acquisition Corporation and Collagen (the "Merger Agreement") is misguided.[5]

■ Section 1.01(a) of the Merger Agreement defines "Acquisition Proposal"

"lengthy and technical" Defendant finds the Merger Agreement to be, this Court finds that the references to the Lipomatrix business in the Merger Agreement were exceedingly clear, and that it is apparent from the agreement that Inamed would retain liabilities of the Lipomatrix business that Collagen possessed prior to the merger.

as an inquiry, offer or proposal regrading certain events involving Collagen or any of its subsidiaries. Ex. G to Bamberger Decl., Merger Agreement. While Defendant is correct that the definition of Acquisition Proposal specifically excludes the Lipomatrix business, it would seem from Defendant's moving papers that it concluded its review of the Merger Agreement with the definitions. Section 7.04 of the Merger Agreement, entitled "No Solicitation; Other Offers" provides that from the date of the signing of the Merger Agreement until the closing of the intended merger, neither Collagen nor its subsidiaries will, among other things "(i) take any action to solicit, initiate, facilitate or encourage the submission of any Acquisition Proposal," and "(ii) engage in discussions or negotiations with, or disclose any non-public information relating to [Collagen] or any of its Subsidiaries or afford access to the properties, books or records of [Collagen] or any of its Subsidiaries to, any Person who [Collagen] has reason to believe may be considering making, or has made, any Acquisition Proposal." Ex. G to Bamberger Decl., Merger Agreement § 7.04(a). Section 7.04 is, as Plaintiffs have indicated in their opposition, a "no shop" provision, which limits Collagen's ability to attempt to obtain a more favorable deal by "shopping" an acquisition offer. Opp'n at 21:9–11. Although very little of the Lipomatrix business, other than liabilities, remained with Collagen at the time of the merger, the definition of Acquisition Proposal appears to exclude Lipomatrix in the unlikely event that a purchaser for those liabilities might be found.

Other provisions of the Merger Agreement support such a reading. In Article V, Collagen's Representations and Warranties, Collagen represents that it has no material liabilities, other than those stated. Ex. G to Bamberger Decl., Merger Agreement § 5.12. Such liabilities include those relating to Collagen's Lipomatrix Business. *Id.* Collagen also discloses litigation with respect to the Lipomatrix Business in its litigation representation. Ex. G to Bamberger Decl., Merger Agreement § 5.13. Such representations are incompatible with Defendant's theory that the Lipomatrix Business was specifically excluded from the merger. The Court therefore agrees with Plaintiffs that nothing in the Merger Agreement indicates that liabilities for the Trilucent breast implants were excluded from the merger of Collagen and Inamed's subsidiary.

### b. Inamed's Form 10–K

In Management's Discussion and Analysis of Financial Condition and Results of Operations in Inamed's annual report for the fiscal year ended December 31, 1999 (the "Form 10–K") filed with the Securities and Exchange Commission (the "SEC"), Inamed states that "[a]s a result of our acquisition of Collagen, we face exposure to claims regarding Trilucent(R) breast implant products which were distributed in Europe between January 1996 and March 1999." Ex. H to Bamberger Decl., Form 10–K. The Form 10–K also discloses the Collagen merger and Inamed's potential liability in Item 3 (Legal Proceedings).

Defendant argues that Inamed's references to its potential liability for Trilucent claims in "a fine print, technical document filed with the SEC"[6] fail to give adequate notice that Inamed was expecting coverage for the Trilucent liabilities when it applied

---

6. The Court notes that Form 10–K is a standard document which must be filed annually by public companies with at least 500 shareholders of one class of stock and at least $5 million in assets. The fact that Defendant is unfamiliar with the annual report format does not speak to the validity of the form of the information provided therein.

for the Inamed policies. Reply at 21:2–10. The Court disagrees, finding that the Form 10–K, which is publicly available, does provide adequate notice, and that Inamed's filing of its Form 10–K placed Defendant on constructive notice of the potential liability for Trilucent breast implant claims.

### c. Inamed's Settlement of Trilucent Breast Implant Claims

■ Plaintiffs assert that Inamed's settlement of Trilucent Breast Implant claims that Defendant refused to cover is presumptive evidence of the fact and extent of Inamed's liability. Opp'n at 24:25–26. In *Isaacson v. California Ins. Guar. Ass'n*, the court stated that "if an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption." 44 Cal.3d 775, 791, 244 Cal.Rptr. 655, 750 P.2d 297 (1988). "[A] reasonable settlement made by the insured to terminate the underlying claim against [it] may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability." *Id.*

### 2. There is At Least a Genuine Issue as to Whether the Merger Agreement is an "Insured Contract" under the Inamed Policy

Defendant contends that the Merger Agreement is not an "insured contract" within the meaning of the Inamed Policy. Motion at 19:20–22. The Inamed Policy defines "insured contract" as, among other things, "[t]hat part of any other contract or agreement pertaining to [the insured's] business ... under which [the insured] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." Ex. U to Bamberger Decl., Inamed Policy Section VI, Paragraph 7. Section I, Paragraph 2 of the Inamed Policy sets forth the exclusions from coverage. Paragraph 2b provides in pertinent part that the policy "does not apply to 'bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Ex. U to Bamberger Decl., Inamed Policy. However, Paragraph 2b excepts from its exclusion "liability for damages (1)[t]hat the insured would have in the absence of a contract or agreement; or (2)[a]ssumed in a contract or agreement that is an 'insured contract' " if such injury occurs subsequent to the execution of the agreement. Ex. U to Bamberger Decl., Inamed Policy.

Defendant contends that the Merger Agreement is not an "insured contract" because rather than assuming the tort liability at issue, "Inamed specifically excluded such assumed liability." Motion at 19:21–23. As indicated above, Defendant's position that the Collagen merger specifically excluded the Lipomatrix liabilities is inaccurate. Defendant has based its entire argument on its misreading of the Merger Agreement.

In their opposition, Plaintiffs contend that the Merger Agreement is an insured contract under the Inamed Policy, citing California Corporations Code § 1107(a), which provides that in a merger, the surviving corporation succeeds to the liabilities of the absorbed corporation. Opp'n at 22:11–14. Plaintiffs also rely on *Northern Ins. Co. v. Allied Mut. Ins. Co.*, in which the court stated that under a theory of product line successor liability, "a purchaser of substantially all assets of a firm assumes, with some limitations, the obligation for product liability claims arising from the selling firm's presale activities." 955 F.2d 1353, 1357 (9th Cir.1992), citing *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977).

Defendant argues in its reply that *Northern Ins. Co.* does not control, and

that the rule set forth *Oliver Machinery Co. v. United States Fid. & Guar. Co.*, 187 Cal.App.3d 1510, 232 Cal.Rptr. 691 (1986) should be applied in the instant case. In that case, the court found that the defendant insurer had no duty to defend or indemnify an additional insured because the terms of the policy did not provide the plaintiff with coverage. 187 Cal.App.3d at 1519, 232 Cal.Rptr. 691. In reaching its decision, the court noted that (1) the product giving rise to the suit was manufactured by the predecessor of the named insured and was thus excluded from the policy's definition of "Named Insured's products", (2) the purchase agreement between the predecessor and the named insured provided that the insured would have no liability with regard to any product sold prior to the closing (3) and the product was not distributed within the insurance coverage period. *Id.* at 1517–1518, 232 Cal.Rptr. 691. The Court finds that *Oliver Machinery* is distinguishable from the instant case. First, the plaintiff in that case was a distributor, rather than the manufacturer, and thus not the actual successor to the business. Second, the policy contained a provision expressly limiting the definition of the insured's products, unlike the instant case, in which the parties dispute whether the Merger Agreement is an "insured contract." Third, unlike the instant case, the parties to the purchase agreement in *Oliver Machinery* excluded liability for products manufactured by the predecessor company. Finally, the *Oliver Machinery* court indicated that the plaintiff distributor could have purchased insurance for its liability for products that it sold that were manufactured by the predecessor company or amended its policy to cover liability for those products. *Id.* at 1518, 232 Cal.Rptr. 691. The Court finds that *Oliver Machinery* does not require a determination that the general rule of successor liability is inapplicable in the instant case.

Thus, not only have Plaintiffs raised a genuine issue of fact as to whether the Merger Agreement is an "insured contract" under the Inamed Policy, they have created a genuine issue of fact that even absent a merger agreement, Inamed would be liable for the Trilucent breast implant claims as a result of the merger. The Court finds that these genuine issues of fact preclude summary judgment on Plaintiffs' claim for declaratory relief. The Court therefore DENIES Defendant's Motion for Summary Judgment on Plaintiffs' declaratory relief claim.

## C. Inamed's Second Cause of Action for Breach of Contract

Defendant advances the same arguments for both Plaintiffs' breach of contract and declaratory relief claims. As indicated above, Defendant's argument is based on a misreading of the Merger Agreement. Plaintiffs have raised genuine issues of fact as to whether the Merger Agreement is an "insured contract" under the Inamed Policy. In addition, they have presented evidence that even if the Merger Agreement is not an "insured contract," Inamed would be liable for Trilucent breast implant claims under both statutory and case law. The Court therefore finds that there are genuine issues of fact precluding summary judgment on Plaintiffs' breach of contract claim. The Court DENIES Defendant's Motion for Summary Judgment on Plaintiffs' breach of contract claim.

## IV. CONCLUSION

For the reasons stated above, the Court hereby DENIES Defendant's Motion for Summary Judgment in its entirety.