# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 27, 2008

Charles R. Fulbruge III
Clerk

No. 07-30597

ROBERT WEAVER

Plaintiff

v.

CCA INDUSTRIES, INC.

Defendant – Third-Party Plaintiff – Appellant

v.

NEW YORK MARINE & GENERAL INSURANCE COMPANY

Third-Party Defendant – Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS and SOUTHWICK, Circuit Judges, and DRELL, District Judge.[*]

DAVIS, Circuit Judge:

This appeal challenges the district court's conclusion that the policy issued by Third-Party Defendant New York Marine & General Insurance Company ("NY Marine") to Phoenix Laboratories, Inc. ("Phoenix") provided no coverage to

---

[*] United States District Judge for the Western District of Louisiana, sitting by designation.

Third-Party Plaintiff-Appellant CCA Industries, Inc. ("CCA") and that NY Marine had no obligation to defend or indemnify CCA. For reasons stated below, we vacate and remand for further proceedings.

I.

Plaintiff Robert Weaver ("Weaver") brought this lawsuit to recover for injuries he allegedly sustained from ingesting Permathene, a product marketed and sold by CCA. In 1995, Weaver began taking Permathene, an over-the-counter diet drug/appetite suppressant which contains phenylpropanolamine ("PPA"). Eleven days after he began taking Permathene, Weaver suffered a hemorrhagic stroke. Weaver contends that the PPA in Permathene caused his stroke.

Weaver filed this products liability suit against CCA, as manufacturer and seller of Permathene. Weaver contends that Permathene was unreasonably dangerous due to defective manufacture and design, Permathene failed to conform to CCA's express warranty, CCA failed to provide an adequate warning regarding the risks associated with Permathene, and CCA negligently failed to adequately and properly test Permathene.

Although CCA sells and markets Permathene, Phoenix manufactures the product. Using a formula provided by CCA, Phoenix combined the component Permathene ingredients in its factory and then shipped the product in bulk to CCA to be packaged and labeled. CCA marketed Permathene for sale to the general public at retail outlets.

Weaver has not asserted any claim against Phoenix directly. CCA made demands on Phoenix's insurer, NY Marine, for defense and indemnification of any damages it might have to pay Weaver. NY Marine declined coverage and the request for defense in July 2002, and again in May 2006.

It is undisputed that NY Marine had in effect a Claims-Made Products/Completed Operations Liability Insurance Policy (the "Policy")

affording liability coverage to Phoenix and other insureds. The Policy provides coverage to its insureds for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' included within the 'products-completed operations hazard' to which the insurance applies."

In June 2006, CCA filed a third-party complaint against Phoenix and against NY Marine for defense and indemnification. CCA asserts that Phoenix obtained a claims-made liability policy from NY Marine and that under its vendor's endorsement, the Policy afforded liability coverage to CCA for liability arising out of its sale of the product manufactured by Phoenix.

CCA was not a named insured under the Policy and does not claim coverage on this basis. CCA claims coverage under the Policy's vendor's endorsement ("Endorsement # 5"), which provides in full:

ENDORSEMENT # 5
ADDITIONAL ASSURED - VENDORS
(BROAD FORM - BLANKET BASIS)

In consideration of the premium charged, it is hereby agreed that the definition of insured is amended to include any person or organization designated as a vendor but only with respect to the distribution or sale in the regular course of the vendor's business of the Named Insured's products subject to the following additional provisions:

1. The insurance with respect to the vendor does not apply to:
   (a) any express warranty unauthorized by the named insured;
   (b) bodily injury or property damage arising out of
      (i) any physical or chemical change in the form of the product made intentionally by the vendor,
      (ii) repacking, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer and then repacked in the original container,

    (iii)   demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product, or

    (iv)   products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

    2.    The insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products.

ALL OTHER TERMS AND CONDITIONS REMAIN
UNCHANGED.

NY Marine filed a motion for summary judgment, which the district court granted. In its ruling, the district court found that CCA is not an additional insured under Endorsement #5 because the claims were based on CCA's independent negligence, and under Louisiana law vendor's endorsements only extend coverage for claims involving strict liability. The court further ruled that even if CCA could otherwise qualify for coverage under the vendor's endorsements, several of the limitations under that endorsement would exclude coverage. The district court then dismissed CCA's third-party demand against NY Marine and this appeal followed.

II.

A.

We review the district court's grant of summary judgment de novo. Facility Ins. Corp. v. Employers Ins. of Wausau, 357 F.3d 508, 512 (5th Cir. 2004) (citing Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir.2003)). Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that

4

the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986).

B.

The parties agree that Louisiana law governs interpretation of the Policy. The Louisiana Supreme Court recently announced a number of helpful rules to guide us in interpreting insurance policies. See generally Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003). Under Louisiana law, an "insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." Id. (citations omitted). "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract." Id. (citing, inter alia, La. Civ. Code art. 2045). "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." Id. (citing, inter alia, La. Civ. Code art. 2047). "The determination of whether a contract is clear or ambiguous is a question of law." Id. (citation omitted).

CCA argues that it is entitled to both defense and indemnity. With respect to the duty to defend, the Louisiana Supreme Court has set out the appropriate standard as follows:

> Generally the insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured

5

regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured.

Yount v. Maisano, 627 So. 2d 148, 153 (La. 1993) (citing Am. Home Assurance Co. v. Czarniecki, 230 So. 2d 253 (La. 1969); Meloy v. Conoco, Inc., 504 So. 2d 833 (La. 1987); Benoit v. Fuselier, 195 So. 2d 679 (La. App. 3d Cir. 1967)).

## C.

We now turn to the first issue presented in this appeal: whether CCA qualifies as an additional insured under the vendor's endorsement in the Policy NY Marine issued to Phoenix.[2] The critical language in Endorsement #5 provides: "it is hereby agreed that the definition of insured is amended to include any person or organization designated as a vendor but only with respect to the distribution or sale in the regular course of the vendor's business in [Phoenix's] products subject to the following additional provisions . . . ."

The district court correctly found that CCA qualifies as a vendor. But this does not completely answer our question. Under Louisiana law, vendor's endorsements "have been interpreted as providing coverage where the vendor is found strictly liable for selling a defective product and excluding coverage where the vendor is found to be independently negligent." McGill v. Cochran-Sysco Foods, 818 So. 2d 301, 308 (La. App. 2 Cir. 2002) (citation omitted); see also Easton v. Chevron Indus., Inc., 602 So. 2d 1032 (La. App. 4 Cir. 1992), writs denied, 604 So. 2d 1315 and 604 So. 2d 1318 (La. 1992).

---

[2] CCA also asserts that certain Certificates of Liability Insurance ("COLI") naming CCA as the certificate holder and an additional insured under the NY Marine policy give rise to coverage, but even if we were to assume, as the plaintiff asserts, that the COLI were issued by an agent of NY Marine, the COLI cannot affect the terms of the underlying insurance policy. At the top of the certificate appears a statement that the COLI is informational only and does not confer rights to the holder nor does it amend, extend, or alter the coverage outlined in the policies. Thus we must look to the Policy, not the COLI, to determine coverage.

It is true that Weaver's petition asserts that CCA was independently negligent in a number of respects. However, Weaver's complaint also asserts a strict liability claim under the Louisiana Product Liability Act ("LPLA") based on the allegation that the product was unreasonably dangerous in construction or composition.[3] Louisiana courts have made it clear that liability under the LPLA may be based on strict liability.[4]

CCA could be held liable under the LPLA as a manufacturer due to the fact that it labels the product and sells it on its own.[5] Weaver's claim under the

---

[3] La. R.S. § 9:2800.55 ("A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."). The LPLA is applicable to pharmaceutical products. See, e.g., Stahl v. Novartis Pharm. Corp., 283 F.3d 254 (5th Cir. 2002) (involving Lamisil, a prescription drug); Wheat v. Pfizer, Inc., 31 F.3d 340 (5th Cir. 1994) (involving Feldene, a prescription drug).

[4] See, e.g., Lawson v. Mitsubishi Motor Sales of Am., Inc., 938 So. 2d 35, 49 (La. 2006) ("However, in strict product liability cases, particularly those based upon defective manufacture, the circumstances sometimes establish that defective manufacture was the most probable cause of the victim's injuries.") (quoting FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LOUISIANA TORT LAW § 8.06[4] (Release No. 2, 2nd ed. 2005) (footnotes omitted)) (emphasis added); Bearly v. Brunswick Mercury Marine Div., 888 So. 2d 309, 313 (La. App. 2 Cir. 2004) ("La. R.S. 9:2800.55's definition of an unreasonably dangerous product does not require that the manufacturer have knowledge that the construction or composition of the product is defective. The liability theory underlying that section is therefore a type of strict liability . . . ."); Darbonne v. Wal-Mart Stores, Inc., 774 So. 2d 1022, 1029 (La. App. 3 Cir. 2000) (discussing Section 9:2800.55 in the context of strict liability); cf. Hickman v. Wm. Wrigley, Jr. Co., 768 So. 2d 812, 816 (La. App. 2 Cir. 2000) (discussing strict liability "foreign-natural" test for food sellers in context of a Section 9:2800.55 claim). One treatise argues that the statute might impose something stricter than strict liability — absolute liability — because it does not involve "a balancing of the risks of the incorrectly made product against the dangers it presents." See FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LOUISIANA TORT LAW § 15.09 (Release No. 4, 2nd ed. 2007).

[5] La. R.S. § 9:2800.53 provides, in relevant part:

(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
   (a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

7

LPLA therefore could potentially visit liability on CCA based on strict liability for Phoenix's actions. For example, if Phoenix deviated from the formula or failed to follow the formula in manufacturing the product, CCA could be liable as a manufacturer under the LPLA despite its lack of fault. Thus, CCA qualifies as an additional insured under Endorsement #5 to the NY Marine policy with respect to Weaver's claim under the LPLA unless a specific exclusion to Endorsement #5 precludes recovery. We turn next to a discussion of the two relevant exclusions.

First, NY Marine argues that exclusion I(b)(iv) excludes coverage for this claim because CCA "labeled" the product after Phoenix sold the product in bulk to CCA.[6] It is undisputed that the product arrived in bulk from Phoenix and was packaged, labeled, and marketed by CCA. CCA agues, however, that this is not enough to trigger the exclusion because no nexus has been shown between CCA's labeling or other alteration of the product and Weaver's injury.

Very few cases have considered this precise issue of whether an insurer must show a nexus between the labeling or alteration of the product and the injury. We find the two federal court decisions on the issue most persuasive. In Mattocks v. Daylin Inc., 452 F. Supp. 512 (W.D. Pa. 1978), aff'd., 614 F.2d 771 (3rd Cir. 1979) (Table), Sullcraft Manufacturing Company ("Sullcraft") purchased cotton goods from Dan River, Inc. ("Dan River"). From these fabrics Sullcraft manufactured and sold pajamas to Mattocks, the underlying plaintiff, who was injured when the pajamas ignited. Mattocks sued Dan River and

---

(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage. . . .
La. R.S. § 9:2800.53.

[6] Exclusion 1(b)(iv) reads:
The insurance with respect to the vendor does not apply to . . . bodily injury or property damage arising out of . . . products which after distribution or sale by the named insured have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

Sullcraft on a number of products liability theories including one for failure to warn. Sullcraft sought defense and indemnity under the vendor's endorsement on Dan River's policy with Insurance Company of North America ("INA"). INA relied on the "relabeling" exclusion similar to the one NY Marine relies on in today's case along with an argument that Sullcraft's alterations in the fabric, to make them into pajamas, excluded coverage. The court rejected the insurer's arguments that coverage was excluded. The court reasoned, first, that the "arising out of" language of section 1(b)(i) limited the applicability of that exclusion[7] and that changes in form by a vendor must cause plaintiff's injuries before the vendor is excluded from coverage under the endorsement. Id. at 515. Second, the court concluded that the injury sustained by Mattocks when the pajamas ignited cannot be said to have arisen out of the relabeling or changes Sullcraft made to the product. Id.

In Sears, Roebuck and Co. v. Reliance, 654 F.2d 494 (7th Cir. 1981), the Seventh Circuit relied heavily on Mattocks to reject a similar argument. In that case, plaintiff sued after slacks he purchased from Sears, Roebuck and Company ("Sears") ignited and injured his daughter. The Riegel Textile Corporation ("Riegel") manufactured the fabric. Sears purchased the fabric from Riegel, which upon Sears' instruction, sent the fabric to Rollic, Inc., which made the slacks and shipped them to Sears to sell. The Cumberlands purchased the slacks from Sears for their daughter. The slacks later caught fire and she was injured. Commercial Union Insurance Company ("Commercial Union") issued a liability policy to Riegel, which included a vendor's endorsement. Sears sought defense and indemnity for the Cumberlands' suit. Commercial Union argued that coverage was excluded under the vendor's endorsement because of the

---

[7] "Section 1(b)(i) excludes coverage with respect to any bodily injury "arising out of" any intentional, physical change in form of the product by the vendor." Mattocks, 452 F. Supp. at 515.

relabeling and physical changes Sears either made or caused to be made after it left the hands of the manufacturer. The court cited the Mattocks opinion a number of times and accepted its reasoning, stating that "the changes in form by a vendor must cause plaintiffs injuries before the vendor is excluded from coverage under the endorsement." Id. at 498.

Couch on Insurance states that if the exclusion is written to apply once the insured's product has been relabeled, injury must arise out of the relabeling or out of the use of the insured's product as a part of another product in order for coverage to be excluded.[8] Although no Louisiana court has considered this particular exclusion in this context, most courts which have considered this question have required this nexus. See supra. Thus, our best Erie guess is that Louisiana would adopt the majority position and require the nexus between the alteration and the injury.

In his complaint, Weaver asserted a number of product liability theories in support of recovery. He alleged that the product was unreasonably dangerous due to defective manufacture and design, that the product failed to conform to CCA's express warranty, that CCA failed to adequately and properly test the product, and that CCA failed to provide adequate warning. Arguably, Weaver's claim predicated on a failure to warn theory has a nexus to CCA's relabeling of the product. But, as in Mattocks, Weaver has a number of other recovery theories that have no nexus to the relabeling. The district court therefore erred

---

[8] COUCH ON INSURANCE § 130:10 (3d ed. 2007) (Citing Mattocks, 452 F. Supp. 512; Oliver Machinery Co. v. United States Fid. & Guar. Co., 187 Cal. App. 3d 1510 (2d Dist. 1986); Am. White Cross Laboratories, Inc. v. Continental Ins. Co., 495 A.2d 152 (N.J. Super. 1985)); see also Oliver Machinery, 187 Cal. App. 3d 1510 (rejected the insurer's argument that the relabeling exclusion triggered the exclusion from coverage under the vendor's endorsement predicated on the Sears case); but see Travelers Ins. Co. v. Freightliner Corp., 256 Ill. App. 3d 1049, 1056–57 (Ill. App. Ct. 1993) (disagreeing with other courts that a nexus is required between the exclusion and the injuries).

in determining that this exclusion defeats CCA's claim for coverage against Weaver's LPLA claim.

We turn, finally, to exclusion 2.[9]  NY Marine argued, and the district court agreed, that the formula provided by CCA to Phoenix was an "ingredient" for the purposes of this exclusion.  We disagree.  This interpretation of ingredient is inconsistent with the common sense meaning of that word.  There is a logical, common sense distinction between the formula, a list of ingredients, and the ingredients themselves.  A simple desktop dictionary defines "formula" as "a prescription of ingredients in fixed proportion."  WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 499 (1984).  "Ingredient is defined as "[a] constituent element of a mixture or compound."  Id. at 628.  In short, the formula or recipe for a product is different from the ingredients used to create the product.  Noone would say that a recipe for lemon pie is one of the ingredients the baker uses to make the pie.  We thus conclude that the district court also erred in finding exclusion 2 applicable.[10]

### III.

The district court erred in holding that exclusion 1(b)(iv) and exclusion 2 exclude coverage for Weaver's LPLA claim.  Exclusion 1(b)(iv) is inapplicable because there existed no nexus between the harm alleged in some of Weaver's claims and the alteration and relabeling of the product.  Exclusion 2 is inapplicable because the formula for a product is not an "ingredient" for purposes of making that product.  For these reasons, we vacate the district

---

[9] Exclusion 2 reads: "The insurance does not apply to any person or organization, as insured, from whom the named insured has acquired such products or any ingredient, part or container, entering into, accompanying or containing such products."

[10] We need not address CCA's motion to supplement the appellate record because the purpose of the supplement was to demonstrate that the formula for a product is not the same as the ingredients used to create the product.

court's judgment and remand this case to the district court for further proceedings not inconsistent with this opinion.

VACATE and REMAND.