[No. B091244. Second Dist., Div. Six. Jan. 25, 1996.]

THE HARTFORD, Plaintiff and Respondent, v.
THE STATE OF CALIFORNIA et al., Defendants and Appellants.

COUNSEL

Clifford & Brown and Patrick J. Osborn for Defendants and Appellants.

Aron, Newman & Hurley and Murray M. Aron for Plaintiff and Respondent.

OPINION

STONE (S. J.), P. J.—This case concerns whether an insurer has a duty to defend a claim of coverage for a personal injury which occurred at a state fair. The State of California (the State), the California Fairs Insurance Authority (the Authority) and the Sixteenth District Agricultural Association (the District) appeal from the judgment in favor of respondent, the Hartford, in this declaratory relief action. Because the injury did not arise out of operations covered by the policy and because it occurred in a remote location from those operations, we affirm the judgment.

FACTS

Gordon and Marion Hurtt and Robert and Carol McQuinn do business as Just Right Satellite (JRS), selling and servicing television satellite dishes.

Gordon rented a booth for JRS at the California Mid-State Fair. The rental agreement required JRS to indemnify and save harmless the State and others from all claims and suits resulting from any injury to any person ". . . caused by, arising out of or in any way connected with the exercise by Rentor of the privileges herein granted." The rental agreement granted JRS the right to occupy a 20-by-50 foot space, designated by the fair management, for the sole purpose of providing information, displaying and selling certain equipment for televisions during the term of the fair, August 7 through August 19, 1990. The agreement allowed exhibitors to set up their booths on August 5 and August 6, 1990. The rental agreement incorporated rules and regulations for exhibitors. Those rules required rentors to ". . . confine said transactions to the space and privileges provided in the Rental Agreement . . . ." The rules warned exhibitors in underlined, capitalized words that the fair management would strictly enforce the rules.

One document incorporated into the rental agreement delineated the insurance coverage requirements for exhibitors. Appellants required exhibitors to provide evidence of insurance coverage to protect the legal liability of the State, the Authority and the District from bodily injury liability for the term of the fair. It required JRS to obtain an insurance certificate to cover appellants ". . . but only insofar as the operations under this contract are concerned." JRS obtained the required coverage as an endorsement to its Hartford policy. The endorsement named the appellants as additional insureds for the term of the fair ". . . but only insofar as the operations under this contract are concerned."

Phillip McQuinn is the grandchild of Gordon and Marion Hurtt. On August 6, 1990, the day before commencement of the fair, Gordon and Phillip's father, Robert, were setting up their JRS booth at the fairgrounds. Marion came to assist Gordon and Robert and to watch the grandchildren. She accompanied Phillip who climbed to the top row of the permanent horse show arena grandstand bleachers to watch a cutting horse contest. The grandstand was about 100 feet from the JRS booth. A safety bar on the bleachers gave way and Phillip fell to the concrete below, sustaining injuries.

Robert and Carol McQuinn and JRS sued the State, the Authority and the District, among others, on behalf of Phillip for damages for his injuries under theories of premises liability, products liability and negligence. The suit alleged that the injury was proximately caused by the faulty safety bar on the bleachers and by appellants' negligent supervision, management, maintenance and control over the bleachers. The Hartford filed the instant declaratory relief action claiming it has no duty to defend or indemnify appellants for the McQuinn suit under the instant endorsement.

The trial court determined that the insurance policy issued to JRS for its booth at the fair does not cover appellants for the accident suffered by Phillip and ruled that the Hartford has no duty to defend or indemnify appellants in the McQuinn action. The trial court found that coverage did not extend to an accident occurring in the fairground bleachers over which JRS had no dominion or control. The fact that Mrs. Hurtt accompanied the children at the fairgrounds because their father was working to set up the JRS booth did not establish any reasonable relationship between the children's activities and the operations of JRS. This appeal ensued from the judgment.

## DISCUSSION

■ " '[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.' " (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." (*Id.* at p. 300, italics in text.) Although exclusions are construed narrowly against the insurer, " 'the burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.' " (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16 [44 Cal.Rptr.2d 370, 900 P.2d 619].) "[T]he duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." (*Id.* at p. 19.) We determine whether the insurer owes a duty to defend by comparing the allegations of the underlying complaint with the terms of the policy. (*Ibid.*)

■ We construe insurance policies according to the rules applicable to all contracts. (*Waller* v. *Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 18; *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [36 Cal.Rptr.2d 100, 884 P.2d 1048].) We read the words used in the policy according to the plain meaning a layman would ascribe to them, and consider the intention of the parties as to what the contract covers. (*Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 666-667 [42 Cal.Rptr.2d 324, 897 P.2d 1] (hereafter *Montrose II*); Civ. Code, §§ 1636, 1648.) A policy provision will be considered ambiguous when it is capable of two or more constructions, each of which are plausible. (*Waller, supra,* at pp. 18-19.) "But, language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be

ambiguous in the abstract. [Citation.] Courts will not strain to create an ambiguity where none exists. [Citations.]" (*Waller, supra,* at pp. 18-19; see also *Montrose II, supra,* at p. 667.)

■ Appellants contend that because Mrs. Hurtt came to the fairgrounds on the day of the incident in part to assist setting up the JRS booth, she was involved in the "operation" of JRS so as to bring Phillip's accident within the coverage of the policy. Appellants also opine that Phillip was on the fairgrounds for the purpose of setting up the JRS booth and that he facilitated his father's continued involvement in building the booth. They also assert that the negligence allegations of the underlying complaint provide the necessary nexus between the operation of the JRS booth and the accident. Neither the underlying complaint nor extrinsic facts known to Hartford when the McQuinns tendered the claim support these assertions. (*Gunderson* v. *Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272].)

The underlying complaint only concerns the allegedly defective bleachers which Phillip climbed to watch the contest. Appellants cite *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 509, footnote 6 [20 Cal.Rptr.2d 376] which defines "operations" broadly to include, inter alia, " '. . . [T]he whole process of planning for and operating a business . . . .' ([Quoting] Webster's New Internat. Dict. (3d ed. 1965) p. 1581.)" This definition of the term "operations" does not assist appellants. There are no allegations in the underlying complaint that Phillip went to the fairgrounds to assist in any way in setting up the JRS booth. It is improper to isolate one word and consider it in the abstract. (*Id.* at pp. 509-510.) It is unreasonable to construe the terms "operations" here to include Phillips's activities in the grandstands.

The specific insurance coverage appellants required was strictly limited to the operations stated in the rental agreement—to the use of the 20-by-50 foot space for a booth to display and sell JRS products. The rule that language of an insurance policy should be strictly construed against the insurer does not apply to the instant circumstance because appellants drafted the language at issue and the insurance company merely adopted appellants' provision. (*Montrose II, supra,* 10 Cal.4th at p. 667; *Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 438 [204 Cal.Rptr. 435, 682 P.2d 1100].) We may not rewrite appellants' rental agreement or the insurance endorsement, nor may we reach a forced conclusion to exact liability under a policy where none was contemplated. (See *Legarra* v. *Federated Mutual Ins. Co.* (1995) 35 Cal.App.4th 1472, 1480 [42 Cal.Rptr.2d 101].) An insurer is not bound by risks it does not insure. (*Ibid.*)

Had Mrs. Hurtt or Phillip become injured around the booth while helping to set it up or operate it, the Hartford likely would have had a duty to defend.

But, the fact that Mrs. Hurtt came to the fairgrounds partially to help set up the booth does not extend coverage to Phillip under the circumstances. He was not there to assist or "facilitate" setting up the booth, and the accident occurred in an area and on a structure which had no relationship to the operations of JRS.

Appellants assert they are entitled to a reasonable expectation of coverage under *Gyler* v. *Mission Ins. Co.* (1973) 10 Cal.3d 216, 219 [110 Cal.Rptr. 139, 514 P.2d 1219]. *Gyler* is distinguishable from the instant case. In *Gyler*, the insurance company drafted the policy without input from the insureds and our Supreme Court considered the expectations of the insureds in light of ambiguity of the language in the insurance company's policy. Here, appellants provided the limiting language which the Hartford parroted, and the policy endorsement is clear. Furthermore, there may be no reasonable expectation of coverage under the instant circumstances.

The limited coverage required by appellants did not extend to failure to adequately supervise, maintain or control defective permanent structures on the fairgrounds which are unconnected to the JRS booth, such as the instant bleachers. The Hartford had no duty to defend against this occurrence, any more than it would have if Phillip's parents or grandparents had brought him during the run of the fair and he suffered an injury on the carnival midway, in the rodeo bleachers or somewhere else on the site unconnected to the operations of the JRS booth. We express no opinion as to whether or not the McQuinns may have stated a cause of action against the appellants or any of them for this injury. We only conclude that the Hartford has no duty under the instant policy endorsement to defend appellants against the McQuinn suit.

The judgment is affirmed. Costs to respondents.

Gilbert, J., and Yegan, J., concurred.