Bret STONE, Danielle Stone, Plaintiff,

v.

**HARTFORD CASUALTY COMPANY, Defendants.**

**No. CV 06–03703DDP (AJWX).**

United States District Court, C.D. California.

Nov. 13, 2006.

Bret Stone, Santa Barbara, CA, Pro se.

Danielle Stone, Santa Barbara, CA, Pro se.

Dean B. Herman, Lorne Lilienthal, Robin James, Michelman & Robinson, Encino, CA, for Defendants.

## ORDER RE CROSS–MOTIONS FOR SUMMARY JUDGMENT

PREGERSON, District Judge.

This matter comes before the Court on the plaintiffs' motion for summary judgment and the defendant's cross-motion for summary judgment or, in the alternative, partial summary judgment. After reviewing the papers submitted by the parties, the Court denies the plaintiffs' motion and grants the defendants' cross-motion. Specifically, the Court denies the plaintiffs' motion for summary judgment as to their first cause of action for declaratory relief as to Hartford's duty to defend; denies the plaintiffs' motion for summary judgment as to their second cause of action for breach of contract; grants the defendants' motion for summary judgment as to the plaintiffs' third cause of action for breach of the implied covenant of good faith and

fair dealing; and denies the plaintiffs' motion for summary judgment as to their fourth cause of action under Insurance Code Section 11580(b)(2).

## I. BACKGROUND

This is an unfortunate case of a draftsman insured only under a general liability policy, performing the work of a contractor that ultimately resulted in severe detriment to plaintiff homeowners. The present matter arises out of Hartford Casualty Insurance Company's ("Hartford") denial of coverage and refusal to defend the draftsman, its insured, Peter Szucs in an underlying action against Szucs entitled *Stone v. Szucs,* Case No. 1167045 (Santa Barbara Superior Court) ("Underlying Action"). Plaintiffs Bret Stone and Danielle Stone ("the Stones") bring the present action claiming that Hartford had an obligation under Szucs' Hartford insurance policy, Hartford Spectrum Business Insurance Policy No. 57 SBA AW2572 DX (the "Policy"), to defend him in the Underlying Action and, therefore, is now liable for the stipulated judgment entered against Szucs. This case turns on the determination of whether or not there existed a "potential" for coverage under the Policy based on the Stones' claims.

### A. *The Underlying Action: Stone v. Szucs*

The Stones' May 2, 2005 complaint in the underlying suit ("Underlying Complaint") included the following allegations:[1]

- The Stones are homeowners who hired Szucs to design and construct an addition to their home and to install a new driveway (the "Project");

---

1. The Underlying Complaint was served on Szucs and a courtesy copy also provided to Hartford.

- In June 2003, the Stones gave Szucs $14,750 for a "truss system" for the Project;
- This truss system was never ordered and the funds were misappropriated;
- In December 2003, the Stones paid Szucs $4,250 to start the Project;
- In June 2004, Szucs hired subcontractors and the Project commenced with the tearing off of the roof and rough framing; Around August 2004, construction stopped and soon after the foreman quit due to problems with "cash flow";
- Around September 2004, Szucs hired a general contractor and subcontractors to continue the Project;
- At this stage of the Project, there was no roof and no stucco on the house, but drywall work was underway; Around October 2004, the drywall was complete, but the house was exposed to the elements;
- Around the same time, the forecast called for heavy rains; The Stones informed Szucs of the weather forecast;
- The Stones made their best effort to cover the house with plastic; The Stones suffered severe property damage which was so severe they were forced to move into a hotel and abandon certain rooms of their house until the construction was completed;
- The Stones then learned that Szucs had misappropriated the funds they had given him and that Szucs was so in arrears that he would not be able to complete the construction at all;
- The Stones then hired new subcontractors and paid for materials to make the necessary repairs and complete the construction at an expense $90,000 in excess of the terms of their original agreement with Szucs.
- Szucs' conduct was willful, wanton, and oppressive. Szucs has a duty of care to the Stones unrelated to his rendering of or failing to render any services as a draftsman, as a builder, or otherwise.
- Szucs is guilty of negligence proximately causing the Stones' injuries. Szucs caused or contributed the moisture in the ceiling, drywalls, insulation, and floors, and to the overall unhealthful conditions of their home which rendered it uninhabitable.
- The Stones suffered serious and genuine emotional distress, including but not limited to a fear for their safety and the safety of their young children and the loss of tens of thousands of dollars.

On October 29, 2004, the Stones sent Szucs a letter, with Hartford carbon copied, stating that the saturated drywall and insulation had to be removed; mold spores were revealed requiring treatment; portions of the hardwood floors would have to be replaced and refinished; the exposed walls caused irritations to Mrs. Stone's allergies causing her to become short of breath, and; for the health and safety of the Stones and their children they had to move out of the house and into a hotel.

On January 4, 2005, the Stones contacted Hartford directly to follow up on the problems they suffered due to Szucs' neglect in overseeing their construction project. They included copies of their letters to Szucs, and claimed to have approximately $95,000 in damages, but offered to settle the matter for $65,000. On or about January 31, 2005, Hartford denied coverage to Szucs for the Stones' claims and he subsequently informed the Stones of the denial.

Thus, in March 2005, the Stones brought the underlying suit for damages; punitive damages; an order commanding Szucs to disgorge all ill-gotten gains from engaging in unlawful, unfair and fraudulent practices, and enjoining him from further such practices; and for costs, expenses, and attorneys' fees. The Underlying Complaint alleged breach of contract, breach of

implied covenant of good faith and fair dealing, negligence, private nuisance, negligent infliction of emotional distress, fraud, and misappropriation of client funds in violation of the Unfair Competition Act, Bus. & Prof.Code Section 17200 *et seq.*

In response to the Stones' claim, Szucs requested Hartford to defend him. In a May 10, 2005 letter to Szucs analyzing his claim for coverage, Hartford stated that the Policy provides coverage for "bodily injury" and "property damage", caused by an "occurrence", or "personal and advertising injury" offenses, subject to multiple exclusions.[2] The letter recognizes that the Stones allege that Szucs did not complete the construction on their home, that damages occurred because Szucs abandoned the project, and that Szucs mishandled construction funds. The letter concludes that none of the allegations made by the Stones give rise to a "bodily injury" or an "advertising or personal injury", nor does mismanagement of construction funds or economic damages meet the definition of "property damage". Specifically, the letter claims that exclusions a, j, and k(5) apply in part because Szucs never completed the project he designed. Hartford concluded that under the circumstances there is no duty to defend and no potential for indemnity coverage under the Policy. Thus, Hartford refused to defend Szucs in the underlying suit by the Stones.[3]

On or about November 1, 2005, Szucs and the Stones entered into a Stipulation for Entry of Judgment ("Stipulated Judgment") in the Underlying Action in the amount of $540,000, which was approved by Judge Thomas P. Anderle of the Santa Barbara Superior Court: $15,000 for loss of use of portions of the house due to property damage caused by rains and failure to complete the project in a timely manner; $30,000 for damages caused by failure to protect the house from water damage during rains, including repair and replacement of drywall, insulation, and flooring; $95,000 for the increased cost of the construction due to abandonment of the project, and; $400,000 for emotional distress ($200,000 per plaintiff). The Stones and Szucs also entered into an Agreement for Stipulated Judgment, Assignment of Rights, and Covenant Not to Execute ("Stipulation Agreement"). The Stipulation Agreement assigns to the Stones all of Szucs' legally assignable rights against Hartford in exchange for the Stones' agreement not to execute the Stipulated Judgment.

## B. *The Hartford Insurance Policy*

Hartford issued the Policy, effective May 27, 2004 through May 27, 2005, identifying "Peter Szucs" as the named insured with a premium of $500. The Policy identifies the named insured's occupation as "Draftsman". The application for the Policy represents that the nature of the insured's business is to "create drawings to client specifications" and that no "structural alterations" or "demolitions" are contemplated. The section of the Policy application for information on "contractors" is crossed out. The Policy is a general business liability policy, as opposed to an errors-and-omission policy.

The Insuring Agreement provision of the Policy in part provides:

---

2. The Stones and Hartford stipulate that the Policy's coverage for "personal and advertising injury" liability is not applicable to the loss giving rise to the present lawsuit. (Stipulation Re Documents and Issues for Cross-Motions for Summary Judgment at 3 ¶ 17.)

3. The letter also purported to reserve Hartford the right to rely on additional policy provisions, conditions, terms, or exclusions and amend its position.

A(1)a. We [Hartford] will pay on behalf of the insured [Szucs] those sums that the insured [Szucs] becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We [Hartford] will have the right and duty to defend the insured [Szucs] against any "suit" seeking those damages. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

. . .

   b. This insurance applies to:

    (1) "Bodily injury" and "property damage" only if:

      (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (b) The "bodily injury" or "property damage" occurs during the policy period.

The Policy provides the following definitions of its terms:

G(4). "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

. . .

G(14). "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

G(17). "Products-completed operations hazard";

   a. Includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned.

   . . .

   b. "Your work" will be deemed completed at the earliest of the following times:

    (1) When all of the work called for in your contract has been completed.

    (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that needs service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   c. This hazard does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it; or

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

   . . .

G(18). "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that cause it.

. . .

G(23). "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

## C. *The Insurance Policy Exclusions*

The Insuring Agreement provision of the Policy also sets forth multiple exclusions to which the insurance does not apply, including:

B(1)(a). Expected or Intended Injury

(1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

. . .

(j). Professional Services: "Bodily injury" or "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, design or drawings and specifications;

(3) Supervisory, inspection, architectural or engineering activities;

. . .

(k). Damage to Property: "Property damage" to:

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

## D. *The Present Action*

Pursuant to the Stipulation Agreement and the assignment of rights therein, the Stones have brought the present action to recover the Stipulated Judgment amount from Hartford.

The Stones moved for summary adjudication on the issues of Hartford's duty to defend and Hartford's liability for the Stipulated Judgment entered into by Szucs. The Stones argue that Szucs was entitled, as a matter of law, to have Hartford defend him in the Underlying Action because the allegations of the complaint, along with the Stones' letters to Hartford and Szucs (which were supplied to Hartford), created a potential for coverage, thereby trigger-

ing a duty to defend. Hartford cross-motions for summary judgment on the same issue and also for summary judgment on the Stones' claim for breach of good faith and fair dealing. Hartford claims that the circumstances did not present any potential for recovery and so Hartford denies that they owed a duty to defend Szucs. Hartford also denies that it breached the covenant of good faith and fair dealing. Hartford asserts a number of affirmative defenses, including, several based on exclusion-of-coverage provisions contained in the Policy. Further, Hartford alleges that the present action is the product of collusion between the Stones and Szucs.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56©. This is equally true for summary adjudication of individual claims, issues, or defenses. Fed.R.Civ.P. 56(a).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* The burden of establishing the nonexistence of a "genuine issue" of material fact is on the party moving for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, there is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In deciding a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. DISCUSSION

### A. Plaintiffs' First Cause of Action for Declaratory Relief as to Hartford's Duty to Defend and Second Cause of Action for Breach of Contract

The Stones move this Court for summary judgment as to their claim for declaratory relief that Hartford had a duty to defend Szucs in the underlying action that gave rise to the present dispute. In particular, the Stones claim that Szucs was entitled to a defense because the underlying complaint made allegations against Szucs for conduct and activities potentially covered by Hartford's Policy. In their underlying complaint, the Stones alleged that Mr. Szucs abandoned the construction project on their home, and as a result, the Stones suffered both property damage, bodily injury, and severe emotional distress. The Stones contend that these allegations, along with the terms of the Hartford Policy, created a potential for coverage, thus triggering Hartford's duty to defend.

Conversely, Hartford argues that there is no potential for coverage under the Policy. It argues that several of the Policy's exclusion-of-coverage provisions bar coverage: the "professional services" exclusion, two of the "property damage" exclusions, and the "products-completed operations hazard" exclusion. Hartford argues that neither the underlying complaint nor the letters it received allege an "occurrence" resulting in "property damage" or a "personal injury" as those terms are defined in the Policy. Hartford also argues that any loss caused by Szucs' alleged misrepresentations and failure to return money are not "property damage" under the Policy.

Further, Hartford alleges that it did not breach its insurance contract with Szucs because Hartford insured Szucs only as a "draftsman" and never assumed any risk relating to Szucs' construction and/or construction supervision activities. Therefore, Hartford contends it is entitled to summary judgment because it had no duty to defend Szucs in the underlying lawsuit.

1. *Policy Coverage and the Duty to Defend*

■ A liability insurer owes a broad duty to defend its insured against claims that create a "potential" for indemnity. *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). The potential for coverage may arise from the underlying complaint, the terms of the policy, possible amendments to the complaint, or any other extrinsic evidence known to the insurer which would give rise to liability under the policy, even if coverage is ultimately found lacking. *Id.* at 295 & 299–300, 24 Cal.Rptr.2d 467, 861 P.2d 1153; *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 276, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (reasoning that facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy because pleading rules liberally allow amendment and the third party plaintiff cannot be the arbiter of coverage).

■ To prevail on the issue of the insurer's duty to defend, the insured must prove the existence of a potential for coverage; it need only show that the claim against it or some part of it may fall within the insurer's policy coverage. *Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. On the other hand, to be absolved of its duty to defend an insurer must demonstrate that under no circumstance or conceivable theory can any part of the claim fall under the policy coverage.

*Id.; Gray*, 65 Cal.2d at 275–76, n. 15, 54 Cal.Rptr. 104, 419 P.2d 168. Furthermore, any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor. *Horace Mann Ins., Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792 (1993). The insurer's duty to defend arises on tender of defense and lasts until it can conclusively show that there is no potential for coverage. *Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

■ Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. *Vann v. Travelers Cos.*, 39 Cal.App.4th 1610, 1615, 46 Cal.Rptr.2d 617 (1995); *Montrose*, 6 Cal.4th at 299–300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. If the insurer uses language which is uncertain, any reasonable doubt will be resolved against it. If the doubt relates to the extent or fact of coverage, such as whether or not the peril is insured against, the language will be understood in its most inclusive sense, for the benefit of the insured. *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 437–38, 296 P.2d 801 (1956). An insurance policy and specifically its exclusions are "strictly construed against the insurer and liberally interpreted in favor of the insured." *See Delgado v. Heritage Life Ins. Co.*, 157 Cal.App.3d 262, 271, 203 Cal.Rptr. 672 (1984). In addition, exclusions "are to be interpreted by their plain meaning and will not be stretched to cover areas not intended by the clause." *See Oliver Mach. Co. v. United States Fidelity and Guar. Co.*, 187 Cal.App.3d 1510, 1514, 232 Cal.Rptr. 691 (1986).

Conversely, where courts have found that no potential for coverage existed it has generally been in instances were it was evidently clear that the claims made fall outside of the policy coverage. *Montrose*, 6 Cal.4th at 298, 24 Cal.Rptr.2d 467, 861

P.2d 1153 (explaining that no potential for coverage exists where the acts "occurred on a date when the policy was not in effect or at a location concededly not covered by the policy") (citations omitted); *Insurance Co. of the West v. Haralambos Beverage Co.*, 195 Cal.App.3d 1308, 1317, 241 Cal. Rptr. 427 (1987) (finding no potential for coverage where claims were for breach of contract and the policy clearly only covered tort liability for bodily injury or property damage) (disapproved on other grounds); *Waller v. Truck Ins. Exch. Inc.*, 11 Cal.4th 1, 26–27, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (finding no potential for coverage where the complaint sought damages purely for economic loss and emotional distress stemming from economic loss rather than bodily injury or property damage); *Tana v. Professionals Prototype I Ins. Co. Ltd.*, 47 Cal.App.4th 1612, 1617, 55 Cal.Rptr.2d 160, (1996) (finding no duty to defend where malpractice insurance excluded legal fees from covered damages and the action clearly did not complain of anything lawyer did or did not do, but clearly sought only the return of attorney fees); *The Hartford v. State of Calif.*, 41 Cal.App.4th 1564, 1569, 49 Cal. Rptr.2d 282 (1996) (where insurance covered only liability in connection with the renting of booths, there was no duty to defend claim for personal injuries occurring away from the rented booths); *Fire Ins. Exch. v. Jiminez*, 184 Cal.App.3d 437, 442, 229 Cal.Rptr. 83 (1986)(Insured injured victim while engaged in a business pursuit specifically excluded under his liability insurance policy. Victim sued, alleging negligence generally, without mentioning the Insured's business pursuit. Those allegations did not create a duty to defend because undisputed facts established that the underlying occurrence was clearly excluded).

### 2. The "Professional Services" Exclusion Bars Any Potential for Coverage Under the Policy

■ The duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 19, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). Policy exclusions cannot be disregarded: "An insurance company has the right to limit the coverage of its policy and when it has done so the plain language of the limitation must be respected." *National Ins. Underwriters v. Carter*, 17 Cal.3d 380, 386, 131 Cal.Rptr. 42, 551 P.2d 362 (1976). Even when the loss alleged comes within the insuring clause, there is no coverage if the exclusion applies. *Westoil Terminals Co. v. Industrial Indemnity Co.*, 110 Cal.App.4th 139, 146, 1 Cal. Rptr.3d 516 (2003).

■ The Stones argue in their motion that they suffered "bodily injury" and "property damage" to their real property and personal property, that these damages were caused by an "occurrence," and that the existence of allegedly covered damages creates a duty to defend. They argue that the various exclusions in the Policy are inapplicable to the circumstances of this case. The Court finds the Stones' analysis unpersuasive. As discussed below, the "professional services" exclusion to the Policy eliminates the potential for coverage of Szucs' activities.

The Policy's "professional services" exclusion (Policy exclusion "j") states that the insurance does not apply to:

> "Bodily injury" or "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. This includes but is not limited to:
>
> > (1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, design or drawings and specifications;

(3) Supervisory, inspection, architectural or engineering activities;

On its face, the Policy's "professional services" exclusion clearly applies to the Stones' claims based on Szucs' professional undertaking to draft plans for room additions, construct and/or supervise construction of the additions, and install a driveway.

The "professional services" exclusion excludes coverage for injuries—including "bodily injury" and "property damage"—"due to the rendering or failure to render any professional service." Such "professional services" include, "but are not limited to," preparation, approval, or failure to prepare or approve "shop drawings" and/or "designs or drawings and specifications," and "supervisory" activities.

"Professional services" are defined as those arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual. It is a broader definition than "profession" and encompasses services performed for remuneration.

*Tradewinds Escrow, Inc. v. Truck Ins. Exch.,* 97 Cal.App.4th 704, 713, 118 Cal. Rptr.2d 561 (2002).

In the Underlying Complaint, the Stones attempt to circumvent the "professional services" exclusion by describing Szucs' services as "non-professional services." They also claim that the duty to defend is triggered because their injuries were "unrelated" to Szucs' "rendering or failure to render any professional service." Although the Underlying Complaint alleges that the Stones' damages were "unrelated" to Szucs' rendering of or failing to render any services as a draftsman, builder, or otherwise, the Court finds the Stones' characterization of Szucs' services to be pure semantics.

Szucs' services were clearly related to the rendering of professional services. Szucs contacted to draft plans and construct room additions and a driveway for the Stones. Such drafting and construction requires specialized intellectual knowledge, labor, and skill, and thus were noncovered "professional services." The mere allegation that Szucs' service were "nonprofessional" did not obligate Hartford to defend Szucs. The duty to defend is measured by the facts alleged in the thirdparty complaint rather than by the third party's characterization of the facts. *Barnett v. Fireman's Fund Ins. Co.,* 90 Cal. App.4th 500, 510, 108 Cal.Rptr.2d 657 (2001) (duty to defend measured by facts alleged rather than by cause of action pleaded by third party.)

The Stones' further attempt to avoid the "professional services" exclusion by arguing that some of Szucs' services—including measuring and handling windows and shear wall, removing drywall and insulation, and working with electricians and plumbers—are not among those described in the "professional services" exclusions' list of non-covered services. The Stones ignore the "professional services" exclusion's plain language stating that the scope of the exclusion "includes, but is not limited to" the various excluded services listed therein.

Additionally, California law recognizes the difference between the risks assumed by insurers under general liability policies and those assumed under errors and omissions policies, and also recognizes that general liability policies do not cover losses resulting from the insured's professional

errors and/or omissions. *Allstate Ins. Co. v. Interbank Financial Services,* 215 Cal. App.3d 825, 264 Cal.Rptr. 25 (1989).

The Policy that Szucs purchased is unambiguously a business package policy that includes general liability coverage. Hartford assumed the risk of losses arising from factors *other* than Szucs' rendering of "professional services." Examples of potentially covered losses under Szucs' Policy would include a "bodily injury" claim resulting from a "slip-and-fall" on Szucs' business premises or "property damage" to a customer's car while it is parked in Szucs' parking lot.

While Hartford assumed the risk of these kinds of losses, Hartford did not assume the risk of insuring Szucs' errors and omissions. The "professional services" exclusion, on its face, intended to limit coverage to general liability. Having found that the "professional services" exclusion removes any potential for coverage under the Policy, the Court need not address the applicability of the remaining policy exclusions. Thus, the Court grants summary judgment on the duty to defend in Hartford's favor.

### B. Plaintiffs' Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing

The Stones contend that the issue of bad faith liability is not before the Court on these cross-motions for summary judgment and fail to substantively oppose summary judgment as to this cause of action. However, Hartford's cross-motion for summary judgment seeks summary adjudication on the Stones' claim that Hartford acted in bad faith in investigating the claims and damages that were the subject of the tender of defense, in denying coverage including the duty to defend, and in rejecting opportunities to settle the Underlying Complaint within the available policy limits. Hartford argues that this claim fails because the absence of coverage precludes a finding of bad faith, or, alternatively, the existence of a genuine issue as to Hartford's obligation precludes a finding of bad faith as a matter of law.

■■ The covenant of good faith and fair dealing is implied in every contract including insurance policies. *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 328 P.2d 198, (1958) (citations omitted); *Kransco v. Am. Empire Surplus Lines Ins. Co.,* 23 Cal.4th 390, 97 Cal.Rptr.2d 151, 2 P.3d 1 (2000). It takes on particular importance in insurance coverage disputes because insurers are "invested with a discretionary power affecting the rights of another." *Amadeo v. Principal Mut. Life Ins. Co.,* 290 F.3d 1152, 1161 (9th Cir.2002) (applying California law). An insurer's wrongful and unreasonable refusal to defend its insured constitutes a violation of the covenant of good faith and fair dealing. *Campbell v. Superior Court,* 44 Cal. App.4th 1308, 1320, 52 Cal.Rptr.2d 385 (1996); *Amato v. Mercury Casualty Co.,* 53 Cal.App.4th 825, 831, 61 Cal.Rptr.2d 909 (1997).

■ "In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.,* 237 F.3d 987, 992 (9th Cir. 2001) (applying California law). Furthermore, where "there is no potential for coverage, and hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing. . . ." *Waller v. Truck Ins. Exch.,* 11 Cal.4th 1, 36, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). Additionally, when there is a genuine issue, legal or factual, as to the insurer's liability

under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer. *Chateau Chamberay Homeowners Assn. v. Associated Int'l Ins. Co.*, 90 Cal.App.4th 335, 347–48, 108 Cal.Rptr.2d 776 (2001).

Having found that Hartford was not obligated to defend Szucs under the Policy, the Court finds that no benefits due were withheld, thus failing to meet the first prong of a breach of good faith cause of action. Therefore, the Court need not reach the second element of the *Guebara* test and finds that, as a matter of law, Hartford did not breach the implied covenant of good faith and fair dealing.

Even *assuming arguendo*, that Hartford wrongfully withheld a benefit due Szucs under the Policy, the Court finds that the existence of a genuine coverage dispute involving the proper construction and applicability of the "professional services exclusion" precludes a finding of bad faith on Hartford's part. *See Chamberay Homeowners Ass'n*, 90 Cal.App.4th at 348, n. 7, 108 Cal.Rptr.2d 776. Furthermore, the Stones have not presented any evidence of bad faith related to Hartford's decision to refuse to defend Szucs. Thus, the Court finds that Hartford did not act unreasonably, without proper cause, or in bad faith and grants Hartford's motion for summary judgment as to the Stones' Third Cause of Action for breach of the implied covenant of good faith and fair dealing.

**C. Plaintiffs' Fourth Cause of Action Under Insurance Code Section 11580(b)(2)**

The Stones also move for summary adjudication on their claim for declaration that they are entitled to recover the judgment obtained against Szucs from Hartford pursuant to California Insurance Code 11580(b)(2).

■ Where an insurer refuses to provide a defense of its insured, a stipulated judgment may be enforceable in a direct action against the insurer under Section 11580(b)(2) of the California Insurance Code. *Sanchez v. Truck Ins. Exch.*, 21 Cal.App.4th 1778, 1787, 26 Cal.Rptr.2d 812 (1994). In order to recover on a judgment in an action brought under Section 11580, plaintiffs have to plead and prove that:

1) [they] obtained a judgment for bodily injury, death, or property damage,

2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal,

3) the liability insurance policy was issued by the defendant insurer,

4) the policy covers the relief awarded in the judgment, [and]

5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal.

*Garamendi v. Golden Eagle Ins. Co.*, 116 Cal.App.4th 694, 709–10, 10 Cal.Rptr.3d 724 (2004) *quoting, Wright v. Fireman's Fund Ins. Cos.*, 11 Cal.App.4th 998, 1015, 14 Cal.Rptr.2d 588 (1992).

Having found no potential for coverage triggered by the Stones' allegations against Szucs, the Policy does not cover the relief awarded in the Stipulated Judgment. Thus, an essential element for a cause of action brought under Section 11580 has not been met and therefore, the Stipulated Judgment is unenforceable against Hartford. The Court grants Hartford's motion for summary judgment as to the Stones' Fourth Cause of Action under section 11580.

## IV. CONCLUSION

For the reasons set forth herein, the Court denies the plaintiffs' motion and grant the defendants' cross-motion. The Court denies plaintiffs' motion for summary judgment as to their first cause of action for declaratory relief as to Hartford's duty to defend; denies plaintiffs' motion for summary judgment as to their second cause of action for breach of contract; grants defendant's motion for summary judgment as to plaintiffs' third cause of action for breach of the implied covenant of good faith and fair dealing; and denies plaintiffs' motion for summary judgment as to their fourth cause of action under Insurance Code Section 11580(b)(2). Thus, the Court finds it appropriate to enter judgment in favor of the defendant on all causes of action.

IT IS SO ORDERED.